IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **MARY KUMI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **vs.** | ) | **FILE NO._____** |
| | ) | |
| **UNITED ASSET MANAGEMENT, LLC** | ) | |
| **and FCI LENDER SERVICES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Plaintiff, by and through counsel, requests that this Court issue a Temporary
Restraining Order and Preliminary Injunction enjoining Defendants from carrying
out a foreclosure sale on December 7, 2021, and enjoining Defendants during the
pendency of this action from instituting, prosecuting or maintaining foreclosure
proceedings on Plaintiff's home.  In support of this motion, Plaintiff attaches her
Brief.

Respectfully submitted this 3rd day of December, 2021.

/s/ J. Rachel Scott_____
J. Rachel Scott
Georgia Bar No. 253048
Jennifer Rentenbach
Georgia Bar No. 723810
*Counsel for Plaintiff Mary Kumi*

ATLANTA LEGAL AID SOCIETY, INC.
54 Ellis Street NE
Atlanta, GA 30303
Scott: (404) 614-3986
Rentenbach: (678) 500-7559
Fax: (404) 525-5710
jrscott@atlantalegalaid.org
jrentenbach@atlantalegalaid.org

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **MARY KUMI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **vs.** | ) | **FILE NO._____** |
| | ) | |
| **UNITED ASSET MANAGEMENT, LLC** | ) | |
| **and FCI LENDER SERVICES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff Mary Kumi, a senior homeowner, seeks injunctive relief to prevent the irreparable loss of her home of over 16 years due to a looming foreclosure scheduled for December 7, 2021.  Ms. Kumi filed this action on December 3rd, 2021 against Defendants, who violated both federal and Georgia law in charging grossly-inflated and unauthorized amounts on the second mortgage loan secured by her home, after an extended period of silence concerning the loan. Plaintiff's

3

claims include attempted wrongful foreclosure, breach of contract and declaratory judgment, as well as violations of the Truth in Lending Act (TILA) and the Fair Debt Collection Practices Act (FDCPA) in Defendants' communications with Ms. Kumi concerning the second mortgage.  Pursuant to Fed. R. Civ. P. 65, Ms. Kumi moves this Court for a temporary restraining order and preliminary injunction that will allow her to stay in her home during the pendency of this action.  Justice will not be served if Ms. Kumi prevails on her claims that Defendants' looming foreclosure sale is unlawful because it is being conducted based on a grossly-inflated, improper and unauthorized loan balance, but she nevertheless loses her home as a result of that unlawful foreclosure sale.

<u>FACTUAL BACKGROUND</u>

Ms. Kumi is a 63-year-old homeowner who purchased her home 16 years ago with a first and second mortgage. (Compl. ¶¶ 7-8.) This is the only home Ms. Kumi has ever owned.  (*Id.* ¶ 7.)  Ms. Kumi obtained a modification on her first mortgage in 2013, and has remained current on her payments to date.  (*Id.* ¶¶ 13-14.) During that time period, the value of Ms. Kumi's property was significantly depressed, and was likely less than the amount owed on the first

mortgage, with no value securing the second. (*Id.* ¶ 15.)  At the time of the 2013 modification, Ms. Kumi had not been receiving statements or correspondence on the second mortgage, and understood that the second mortgage had either been resolved as part of the modification or had otherwise been written off.  (*Id.*) For approximately a decade, until May 2021, Ms. Kumi does not recall receiving any statements or any other correspondence about the account and didn't realize there was still a second mortgage on her home. During that time, Ms. Kumi has maintained a good payment history on her first mortgage and has built significant equity in her home.   (*Id.* ¶¶ 14-16.)

In May and June 2021, Ms. Kumi suddenly started receiving correspondence from FCI and UAM concerning the collection of the second mortgage, claiming a total amount of $87,344.77, including a claimed principal amount of $45,089.90 and unpaid accrued interest of $42,254.87.  (*Id.* ¶¶ 17-19.) These notices did not provide any identifying information as to the loan Defendants were purporting to collect, and referenced the name of a prior servicer that Ms. Kumi did not recognize.  (*Id.*) Moreover, the amount of unpaid interest and past due payments being claimed were not authorized unless monthly statements were being provided

to Ms. Kumi, which she had not received for an extended period of time. Thus, Ms. Kumi was genuinely confused and believed these communications to be a scam. (*Id.*)

UAM's June 2021 letter notifying Ms. Kumi that it had purportedly acquired the loan was sent 3 months after the date of the transfer of ownership, in violation of TILA. (*Id.* ¶ 19.) The notice also failed to provide the disclosures required by TILA that would have helped Ms. Kumi to understand what loan UAM had purportedly acquired, and where Ms. Kumi would be able to find the transfer of ownership in the public record so as to be able to verify UAM's authority to collect the loan. (*Id.*)

In addition, despite UAM purportedly acquiring the second mortgage in March 2021 and retaining FCI as servicer in May 2021, Defendants failed to send monthly mortgage statements on the account for the payments purportedly due on June 1, July 1, or August 1, 2021, in further violation of TILA. (*Id.* ¶ 25.) The lack of these monthly statements further added to Ms. Kumi's confusion and further delayed her understanding of the nature of the account and terms on which Defendants were seeking to collect.

In late July 2021, UAM sent a loan modification for the second mortgage account, which would have required Ms. Kumi to agree that she owed a total loan amount of over $90,000, including approximately $43,000 in unpaid accrued interest. UAM further stated that if she did not sign and return it within 2 days, her loan would be "shipped back to the original investor" for foreclosure. Ms. Kumi was able and willing to make the payment amount offered in the modification, and would have accepted it if not for: (1) UAM's misleading correspondence that raised red flags as to whether UAM actually had authority over the loan or whether the original investor was actually the entity with such authority; and (2) UAM doubling the loan amount by including unauthorized interest and fees for the extended period of time when Ms. Kumi was not receiving monthly statements on the account.  (*Id.* ¶¶ 20-22.)

In early August 2021, before even sending its first monthly mortgage statement to Ms. Kumi, Defendants referred the loan to their foreclosure counsel to initiate the foreclosure process. (*Id.* ¶ 24.) The notice of default sent by the foreclosure firm inaccurately demanded a past due balance of $49,971.60, and improperly included unauthorized interest and fees for the decade-long period

when Ms. Kumi was not receiving any correspondence about the second mortgage. (*Id.*)

In response to the communications from FCI and UAM, after receiving no correspondence since 2010 when the loan was serviced by Regions Bank, Ms. Kumi tried to seek verification as to what happened with her second mortgage account and whether UAM and FCI had legal authority to collect and enforce the loan. Ms. Kumi contacted PHH, the servicer of her first mortgage, which researched her inquiry and provided a letter dated August 20, 2021, which stated: "Thank you for the recent communication regarding the account referenced above in which you inquired if the second lien is active and the status of the second lien. We are unable to locate the second lien with the Deed amount of $43,836.00." Ms. Kumi also contacted OneWest/CIT, which acquired the bulk of IndyMac's assets from FDIC receivership. CIT was only able to tell her that the second mortgage was transferred in 2006, but could not locate any additional information as to the name of the transferee company. She also contacted Regions Bank, which was the last servicer she dealt with on the second mortgage in 2010. Regions searched for the account using Ms. Kumi's personal identifying information, but was unable to

locate any record of the loan in their system. (*Id.* ¶¶ 23, 26.)

On or around November 2, 2021, Defendants' foreclosure counsel sent a notice scheduling Ms. Kumi's home for foreclosure sale on December 7, 2021. (*Id.* ¶ 27.)  Although it is clear that UAM handles all loss mitigation, settlement, and negotiation requests directly, the foreclosure notice failed to identify UAM as the entity with full authority to negotiate, amend, and modify the loan, in violation of O.C.G.A. § 44-14-162.2.  (*Id.* ¶ 28.)

In response to the foreclosure notice, Ms. Kumi visited the Gwinnett County courthouse, where she was directed to the deed records and was able to locate an assignment from the original investor to UAM, which had finally been recorded on October 15, 2021.  (*Id.* ¶ 30.)  This was the first time she was able to verify that UAM had a legitimate interest in the second mortgage.  (*Id.*)  However, Ms. Kumi still disputed the balance being claimed due for accrued interest and past due payments during the extended period when she had not been receiving statements or notices about the account, and she contacted UAM to request that they remove these charges. UAM refused.  (*Id.* ¶ 31.)

Ms. Kumi then retained Atlanta Legal Aid, and the undersigned counsel sent

letters to both FCI and the foreclosure firm disputing the amount being claimed due on the account, and requesting verification that monthly statements and other required notices were sent to Ms. Kumi during the extended period for which retroactive interest and fees are being claimed.   (*Id.* ¶¶ 32-33.)  Defendants have yet to provide any such verification to substantiate the exorbitant amount they have demanded from Ms. Kumi, and despite repeated requests by the undersigned, have refused to stop the December 7th foreclosure sale.  (*Id.* ¶¶ 34-35.)

Ms. Kumi has suffered significant emotional distress and mental anguish as a result of Defendants' conduct. She is unable to sleep, and the stress has caused her blood pressure to spike to levels requiring medication. Ms. Kumi has been racked with worry, desperate to save her home, and in constant fear of losing her home to foreclosure. (*Id.* ¶ 36.)

<u>ARGUMENT AND CITATION OF AUTHORITY</u>

**I.    Standard of Review**

To obtain preliminary injunctive relief, Ms. Kumi must show that: (1) she "has a substantial likelihood of success on the merits;" (2) she will suffer irreparable injury if injunctive relief is not granted; (3) the threatened injury to Ms.

Kumi outweighs the harm the injunctive relief may cause to the Defendants; and (4) granting injunctive relief "would not be adverse to the public interest." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006).   Under these four factors, Ms. Kumi is entitled to injunctive relief.

## II.    Ms. Kumi Has a Substantial Likelihood of Success on the Merits

The Defendants are attempting to collect and foreclose on an improperly-inflated and unauthorized loan balance after an extended period of silence of approximately a decade concerning the loan. Such conduct constitutes wrongful attempted foreclosure, breach of contract, and entitles Ms. Kumi to injunctive and declaratory relief. In addition, Defendants have clearly failed to comply with the requirements of TILA and the FDCPA in their communications with Ms. Kumi concerning the loan.

### A. Defendants improperly charged exorbitant amounts of interest and fees for the extended period of time when Ms. Kumi was not receiving required statements or notices, constituting breach of contract and entitling Ms. Kumi to declaratory relief as to the correct amount due.

The rights of Defendants to collect under the terms of the mortgage contract are expressly subject to the requirements and limitations of applicable federal and state law. The Truth in Lending Act (TILA), and the Real Estate Settlement

11

Procedures Act (RESPA) impose requirements and standards that investors and servicers must follow in providing required notices to mortgage borrowers. These requirements were not met for approximately a decade, and Defendants are not entitled to collect interest, charges, and past due payments for such period of time. In particular, TILA requires that mortgage borrowers be provided with a periodic statement for each billing cycle, unless the loan has been charged off and no additional fees or interest will be charged on the account. 15 U.S.C. § 1638(f), 12 C.F.R. § 1026.41. As Ms. Kumi was not receiving monthly mortgage statements for a period of approximately ten years, it is not permitted for interest or fees to be charged to the loan during that period of time.

In addition, when a loan is sold, assigned, or transferred, TILA, 12 C.F.R. § 1026.39, also requires that the new owner of the loan provide notice to the borrower within 30 days of the assignment. Similarly, when the servicing of a mortgage loan is transferred, RESPA, 12 C.F.R. § 1024.33 requires that the transferor and transferee servicers must each send notice at least 15 days before and no more than 15 days after the servicing transfer, respectively. Prior to the welcome letters from FCI and UAM, Ms. Kumi had not received any such transfer

of ownership or transfer of servicing notices concerning the second mortgage. As a result, she was unaware of the continued existence of the second mortgage debt, or who to contact concerning the loan.

Ms. Kumi's non-payment on the loan was caused by the conduct of Defendants' predecessors-in-interest, and such alleged default on the loan is thus excused under O.C.G.A. § 13-4-23. Because no correspondence was being provided to Ms. Kumi to notify her as to where payments should be sent or the amount of the payment, this conduct caused Ms. Kumi not to be able to make payments on the loan, or to know about the existence of the loan so as to pursue other options she might have had with regard to the account, and excuses her from performance on the loan during such time period.

Moreover, Defendants' predecessors-in-interest waived Ms. Kumi's payments on the loan and waived interest on the loan through their course of conduct of allowing non-payment without any collection action or activity for over 10 years. In addition, the lack of any communication with Ms. Kumi for such an extended period of time, in violation of TILA and RESPA requirements, constituted such gross negligence as to constitute constructive fraud, and caused

Ms. Kumi to be misled into believing that she no longer had a second mortgage debt. Under principles of equitable estoppel, Defendants are not entitled to collect amounts that could have been avoided if Ms. Kumi had received appropriate notices concerning the second mortgage. O.C.G.A. § 24-14-29.

Defendants conduct in charging unauthorized interest, fees, and past due payments constitutes breach of contract. Declaratory relief is also necessary and appropriate to confirm the correct amount validly due on the loan.

### B. Defendants failed to timely and properly communicate with Ms. Kumi as required by TILA.

UAM failed to notify Ms. Kumi of the transfer of ownership within 30 days, as required by 12 C.F.R. § 1026.39. Instead, UAM waited for 3 months to notify Ms. Kumi that it had acquired the loan, sending a June 11, 2021 letter that listed the date of the transfer as being March 1, 2021. In further violation of TILA, the notice did not provide identifying information about the loan that was transferred, such as the original date, original loan amount, or original lender. Nor did the notice provide the required information as to whether the transfer of ownership had been recorded in the public records, or where it would be recorded.

Defendants also failed to send periodic statements for several months after acquiring the second mortgage, in violation of TILA, 15 U.S.C. § 1638(f) and 12 C.F.R. § 1026.41. Defendants did not send statements in May, June, or July 2021, but instead waited until mid-August to send the first monthly mortgage statement, after the loan had already been referred to the foreclosure firm.

Defendants' violations of TILA caused Ms. Kumi significant confusion, uncertainty, and distress as to the legitimacy of Defendants' collections efforts. The failure to timely provide these statements and notices as required by TILA also delayed Ms. Kumi in understanding what was happening with her second mortgage account in order to engage with Defendants concerning payment arrangements during the critical period before Defendants referred the loan to foreclosure counsel to accelerate the debt.

### C. FCI violated the FDCPA in its debt collection on the second mortgage.

All of FCI's communications to Ms. Kumi made false representations concerning the amount of the debt, and demanded payment for interest, fees, and past due amounts that were not legally authorized, in violation of 15 U.S.C. § 1692e. FCI's attempts to collect amounts that were not permitted by law also

constituted unfair or unconscionable means to attempt to collect a debt, in violation of § 1692f. FCI's deceptive correspondence claiming such inflated amounts caused Ms. Kumi to suspect FCI of being a scam, and delayed her in exploring options to resolve the amount validly owed. Ms. Kumi also suffered emotional and mental distress each time she received a letter from FCI claiming an astronomical past due balance and accrued interest that she did not believe she owed. The letters confused her and caused her to worry about the status of the second mortgage. She was anxious and fearful that if she did not pay the improper amount claimed due, she was at risk of losing her longtime home to foreclosure.

**D. Ms. Kumi is entitled to injunctive relief barring the wrongful foreclosure scheduled for December 7, 2021.**

Ms. Kumi seeks to enjoin the December 7th sale because it would constitute a wrongful foreclosure under state law. It is well established under Georgia law that a plaintiff may maintain a cause of action for wrongful foreclosure where the plaintiff is primarily seeking an injunction to prevent the actual foreclosure sale from being completed. *See Atlanta Dwellings, Inc. v. Wright,* 272 Ga. 231, 233 (2000) (upholding trial court's order enjoining foreclosure where the court found significant questions concerning construction of a forbearance agreement and

course of conduct which, if proved, could constitute a waiver of strict performance of the deed to secure debt); *West v. Koufman,* 259 Ga. 505, 506 (1989) (upholding trial court's injunction restraining foreclosure where borrower alleged facts that, if proved, would constitute a breach by creditor of the duty of good faith and fair dealing implied in all contracts); *Morgan v. Ocwen Loan Servicing, LLC,* 795 F.Supp.2d 1370, 1377 (N.D.Ga. 2011).

As a preliminary matter, the foreclosure sale would be wrongful because the foreclosure notice failed to provide contact information for the "individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor," as required by O.C.G.A. § 44-14-162.2. The foreclosure notice provided contact information for FCI, as the servicer of the loan, to discuss alternatives to foreclosure. However, UAM, the investor of the loan, actually handles all requests for loss mitigation, modifications, and settlements directly, and it is the entity with full authority that was required to be listed in the foreclosure notice. Such defect in the foreclosure notice would constitute a wrongful foreclosure if the sale were to proceed on December 7, 2021. *Mbigi v. Wells Fargo Home Mortgage*, 336 Ga. App. 316, 320 (2016) (plaintiff stated claim

for wrongful foreclosure where it was alleged that the entity listed in the foreclosure notice did not have full authority to negotiate, amend, and modify all terms of mortgage, and homeowner contended that entity with full authority was owner of note).

Furthermore, the foreclosure sale would be wrongful because Defendants failed to send a proper notice of default as a condition precedent to foreclosure under the security deed. The requirement was not satisfied here because the notice of default improperly included the unauthorized interest, fees, and past due amounts (as discussed above).

Finally, the foreclosure sale would be wrongful because to carry out the scheduled sale would be a failure to exercise the power of sale in good faith. "Under OCGA § 23–2–114, powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised. And the legal duty imposed upon a foreclosing party under a power of sale is to exercise that power fairly and in good faith." *Mbigi*, 336 Ga. App. 316, 318 (punctuation and citation omitted).  Defendants seek to foreclose on an improper loan balance that includes exorbitant and unauthorized amounts of interest and fees. In addition,

Defendants have failed to timely and properly communicate with Ms. Kumi as required by federal law, causing her understandable confusion and delay in trying to make payment arrangements, particularly after such a long period of silence and lack of any collection efforts on the second mortgage. Defendants nonetheless have proceeded with an aggressive foreclosure timeline, refusing to stop the foreclosure after they were notified of the genuine dispute concerning the loan amount, even though an investigation into the issue has not yet been completed. Under these circumstances, such foreclosure sale would not be exercised in good faith and would be wrongful under Georgia law.

### III.   Ms. Kumi Will Suffer Irreparable Injury if the Injunction is Not Granted

The harm Ms. Kumi faces is monumental: the loss of the home she purchased 16 years ago. Without injunctive relief, Ms. Landon's home will be foreclosed on December 7, 2021 and she will face an immediate eviction.

It is well settled that a specific piece of real property is unique and its loss constitutes an irreparable injury. *Johnson v. U.S. Dep't of Agriculture*, 734 F.2d 774, 789 (11th Cir. Ala.1984) (noting that wrongful ejectment could force the Plaintiff to move to "inadequate, often health endangering housing"). "The real

property interest holds a special place in our legal system as in our society, especially in cases involving the potential loss of that most important, tangible piece of emotional and physical stability - the home." *Stubbs v. Bank of Am.*, 844 F. Supp. 2d 1267, 1269 (N.D. Ga. 2012). If Ms. Kumi lost her home to foreclosure and eviction, she would suffer an irreparable injury.

### IV.   The Injury to Ms. Kumi Outweighs Any Potential Harm to Defendants

The balance of equities also favors granting injunctive relief.  Without injunctive relief, Ms. Kumi is facing the grievous injury of losing her home, including the financial and emotional trauma caused by forced displacement.  Any injury to the Defendants in maintaining the status quo would be nominal and would be far outweighed by the considerable and irreparable hardship Ms. Kumi would suffer.

Even if the Defendants were to prevail in this litigation, a delay in their ability to foreclose while this case is adjudicated would not cause them any significant harm.  The outstanding principal balance of Ms. Kumi's first mortgage loan is approximately $144,000.  The payoff amount as of December 6, 2021 for the second mortgage loan at issue is alleged by the Defendants to be $94,362.56.

20

While the balance owed on the second mortgage is in dispute, even if the Defendants' payoff number is correct, the total debt secured by the property would be, at most, approximately $238,363.   As of  December 1, 2021, estimates of the value of Ms. Kumi's home are $349,500 (Zillow), $349,500 (Trulia), and $345,200 (realtor.com).   The first and second mortgages on Ms. Kumi's property are thus both completely secured and Ms. Kumi has a significant equity position that provides a buffer against harm for the Defendants.   The Defendants' financial interest is more than adequately protected by the equity in Ms. Kumi's home, and certainly any harm to the Defendants would be far outweighed by the devastating injury to Ms. Kumi should she lose her home to foreclosure.

### V.        Granting Injunctive Relief Would Serve the Public Interest

Defendants have willfully disregarded federal and Georgia law in their handling of Ms. Kumi's second mortgage account, have unapologetically doubled the balance actually due by unapologetically charging unauthorized interest and fees, and have aggressively pursued foreclosure without first completing an investigation of the correct balance owed, with the goal of unfairly profiting from the significant equity Ms. Kumi has built up in her home during the decade that the

second mortgage sat silently waiting. Unlawful conduct of this nature poses a significant threat to Georgia homeowners, especially if Defendants' conduct here is not an isolated instance. The public interest is served by maintaining the status quo and shielding Ms. Kumi from the devastating and irreversible consequences of foreclosure while this action is pending.

## VI.    Injunctive Relief is Appropriate With No Bond Requirement

Because this is a case filed in pursuit of the public interest, by an individual homeowner with limited income and means, seeking an injunction that will impose a negligible cost, if any, to the Defendants, Ms. Kumi requests that the Court exercise its discretion and require no bond. It is well-established under this Circuit's interpretation of Rule 65 "that the amount of security required by the rule is a matter within the discretion of the trial court, and the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs*., LLC, 425 F.3d 964, 971 (11th Cir. 2005) (punctuation and citation omitted).

There are no meaningful apparent costs to the Defendants as a result of the injunctive relief Ms. Kumi seeks. As noted above, Ms. Kumi has a significant equity position in her home that provides a buffer against harm for the Defendants.

Requiring Ms. Kumi to post bond would stifle efforts of lower-income individuals to challenge wrongful attempted foreclosures, since she would be precluded from obtaining judicial review of the Defendants' actions until after the irreparable injury of foreclosure has already occurred, and the status quo cannot be restored. Accordingly, she respectfully requests that the Court grant her motion without requiring a bond.

Respectfully submitted this 3rd day of December, 2021.

/s/ J. Rachel Scott
J. Rachel Scott
Georgia Bar No. 253048
Jennifer Rentenbach
Georgia Bar No. 723810
*Counsel for Plaintiff Mary Kumi*

ATLANTA LEGAL AID SOCIETY, INC.
54 Ellis Street NE
Atlanta, GA 30303
Scott: (404) 614-3986
Rentenbach: (678) 500-7559
Fax: (404) 525-5710
jrscott@atlantalegalaid.org
jrentenbach@atlantalegalaid.org

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MARY KUMI,** )  | |
| )  | |
| **Plaintiff,** )  | |
| )  | **CIVIL ACTION** |
| **vs.** )  | **FILE NO._____** |
| )  | |
| **UNITED ASSET MANAGEMENT, LLC** )  | |
| **and FCI LENDER SERVICES, INC.,** )  | |
| )  | |
| **Defendants.** )  | |
| )  | |

### <u>Certificate of Service</u>

I hereby certify that I have on the date below served Defendants with a copy

of Plaintiff's Motion for TRO and supporting documents by sending them to its

foreclosure counsel by email as follows:

ajacobs@mtglaw.com

Respectfully submitted this 3rd day of December, 2021.

/s/ J. Rachel Scott_____
J. Rachel Scott
Georgia Bar No. 253048
Jennifer Rentenbach
Georgia Bar No. 723810
*Counsel for Plaintiff Mary Kumi*

ATLANTA LEGAL AID SOCIETY, INC.
54 Ellis Street NE
Atlanta, GA 30303
Scott: (404) 614-3986
Rentenbach: (678) 500-7559
Fax: (404) 525-5710
jrscott@atlantalegalaid.org
jrentenbach@atlantalegalaid.org